Stephen HARWOOD et al., Appellants,

v.

James R. HUNT, Appellee.

No. 7281.

Court of Civil Appeals of Texas,
Beaumont.

Nov. 11, 1971.

Cox, Evans, Pakenham & Roady, Houston, for appellants.

Tillman, Pribilski & Hunt, Houston, for appellee.

KEITH, Justice.

Defendant appeals from an order overruling his plea of privilege to be sued in Fort Bend County and we will refer to the parties as they appeared in the trial court. Plaintiff is a lawyer maintaining his office in Harris County. On May 31, 1967, defendant signed a letter addressed to plaintiff, the material portions of which read as follows:

> Re: Trinity River Authority of Texas vs. Robert S. Parks, et al
> Condemnation Proceedings—San Jacinto County, Texas
> Tract: C-9

"We, the undersigned, hereby fully authorize you to represent our interest with regards to the above captioned cause upon the following basis:

"Contingent fee of Forty per cent (40%) of any excess over the total sum of $57,-754.00 and any and all appraisal fees required in connection therewith shall be allocated fifty per cent (50%) to you and Fifty per cent (50%) to the undersigned."

Plaintiff testified that after being retained by defendant and the other owners, he entered the condemnation case and eventually procured the entry of a compromise judgment therein whereby the landowners had "lifted from condemnation proceedings" some sixty-five acres of land which had been included in the original taking. He also recovered $2,354.00 in money, and received his proportionate part thereof. This lawsuit involves the remainder, if any, of the fee to which plaintiff is entitled for his services. According to plaintiff's testimony, "Mr. Harwood [our defendant] and his relatives owned an undivided half interest in it [the sixty-five acres] and Robert Parks and his

brother owned the balance one-half interest."

On January 21, 1971, plaintiff filed his first amended original petition in the District Court of San Jacinto County.[1] The only defendants named in the trial pleading of plaintiff were Stephen Harwood [our appellant], Mrs. Robert L. Wilson, Mrs. Scott A. McGall, and Bob G. Lewis, Trustee under the Will of Binz J. Settegast, all of whom were nonresidents of the county of suit. Only Harwood filed a plea of privilege. Because of the involved nature of the pleading, an extensive statement of its several counts will be made.

One of the counts in plaintiff's trial petition was in trespass to try title to the entire 220.83 acres in the William Morris Survey, Abstract No. 38, described in the condemnation proceedings. Next, plaintiff declared upon the written contract heretofore noted, alleging that the defendants retained him as their attorney in the condemnation proceeding and that at such time Trinity River Authority "had already proceeded in condemnation to take the entire tract of 220 acres of land" described in the trespass to try title count.

Alleging that defendants had "agreed to compensate Plaintiff for his services 40% of any excess realized over the original offer," plaintiff then alleged that by virtue of his efforts, he recovered for his clients "their respective undivided interest in 65 acres, more or less, of land."

This allegation then followed:

"By virtue of the contract and the subsequent Compromise Settlement Agreement, Plaintiff became the owner of an undivided 40% of the real property realized by these Defendants. In this connection Plaintiff asks specific performance requiring these Defendants to convey to Plaintiff an undivided 40% of

---

1. Plaintiff's original petition in this cause was filed August 31, 1970 but no process issued. The compromise judgment in the condemnation suit was entered on December 18, 1970.

their interest in all the remaining 65 acres of land."

Next, plaintiff had an alternative allegation "that by virtue of the foregoing these Defendants became bound to pay Plaintiff the reasonable value of the services rendered and performed on behalf of these Defendants in the amount of $73,600.00 which sum Plaintiff has been damaged and for which he here now sues." Plaintiff alleged that he had performed such services, "primarily in San Jacinto County, Texas," that payment thereof not having been made within thirty days after demand, he was entitled to attorney's fees for which he also sued.

A further allegation was contained in the petition to the effect that by reason of such services, plaintiff is entitled to "an equitable lien against the real estate" and sought to have such established and foreclosed. Finally, plaintiff alleged that the parties were tenants in common "and together the joint owners of the foregoing real property described in Paragraph II [the 220-acre tract] of this petition, that it is capable of division in kind and should be partitioned among these tenants in common." Plaintiff's elaborate pleading did not seek a reformation of the contract so as to provide payment for services rendered in the event the recovery was in land as distinguished from money.

Defendant's verified plea of privilege, in addition to the required allegations, contained an additional paragraph reading:

"The action brought by plaintiff is properly construed as one for specific performance of a contract, involving a construction of such contract, alleging joint liability of the defendants. Any and all other allegations contained in such petition, including claim of title to land in trespass to try title and claim for foreclosure of lien for personal services were and are fraudulently made for the purpose of wrongfully maintaining venue in the county of suit."

Plaintiff's controverting affidavit invoked Exceptions 5, 12, 13, 14 and 29a of Article 1995, Vernon's Ann.Civ.St. Trial of the venue issue was before the court and no findings of fact or conclusions of law were made. Only plaintiff testified upon the hearing.

■ Plaintiff, in his effort to maintain venue under Exception 5, says, "This contract calls for all the work to be performed by Appellant and Appellee in San Jacinto County and it is expressly named therein and referred to." From this premise, he argues that the "contract sued upon in this case expressly names a definite place for the performance of the obligation imposed thereunder." The contention so advanced will not stand judicial scrutiny and is rejected. As Justice Pope said in Rogers v. Waters, 262 S.W.2d 521, 522 (Tex.Civ.App., San Antonio, 1953, no writ): "Venue under Section 5 is not controlled by the place where the contract requires the plaintiff to perform, but by the place where the contractual obligation sued upon requires the defendant to perform." Here, as in *Rogers*, "The contract * * * is silent as regards the place the appellants are to perform." See also, Western Natural Gas Company v. Kingsley, 355 S.W.2d 246, 248 (Tex.Civ.App., San Antonio, 1962, error dism.); A & S Steel Buildings, Inc. v. Burk, 390 S.W.2d 401, 402 (Tex.Civ.App., Amarillo, 1965, no writ).

■ Nor does plaintiff fare better when he places his reliance upon Exception 12 of the statute, fixing venue for the foreclosure of a lien. Plaintiff argues that although his contract with defendant was "executory contract to begin with and did not convey a present interest in the subject matter at that time, but after (nearly four years) the performance by Appellee of his responsibilities and authority under the agreement, it became an executed contract and Appellee's title was converted from an equitable right to an *equitable title*." Plaintiff's reliance upon Patten v.

Rodgers, 430 S.W.2d 479, 481 (Tex.Sup. 1968) is misplaced.

The contract in this case did not convey *any* interest in land, legal or equitable. It clearly spoke of a recovery of money and plaintiff was to receive a "Contingent fee of forty per cent (40%) *of any excess over the total sum of $57,754.00.*" Our record clearly shows that plaintiff did recover, on behalf of all of the condemnees in the eminent domain (of which defendant was one), $2,354.00 in excess of the original award mentioned in the contract, and that he was paid a portion of this "excess" cash so received. His testimony concerning his fee arrangement is given in this manner:

"Q.  Now, is it your contention that the phrase 'excess' gives you an interest in land?

"A.  That's my understanding of the contract and my intention.

"Q.  So that this word 'excess' entitles you to claim right today an interest in land?

"A.  I said, 'I'll represent you on a contingent basis of forty per cent of anything that you realize, whether it's land, money, or otherwise.'"

The contract construed by Justice Pope in *Patten,* supra, purported to convey an undivided interest "'of whatever interest they may recover for us *in the land* herein described.'" (430 S.W.2d at p. 481). The contract in issue here does not purport to convey any interest in land. It speaks solely of a division of money and is silent as to the payment of legal services in any medium other than money.

■  The language of the contract did not convey or require the conveyance of an interest in land. Mann v. Risinger, 423 S.W.2d 626, 633 (Tex.Civ.App., Beaumont, 1968, error ref. n. r. e.). We recognize the rule that where a suit is brought to foreclose a lien on land, venue may be sustained under Exception 12 "by alleging a lien upon the property, without the necessity of proving a valid debt and lien." Morgan Farms v. Brown, 231 S.W.2d 790, 791 (Tex.Civ.App., San Antonio, 1950), holding expressly approved, Morgan Farms v. Murray, 149 Tex. 319, 233 S.W. 2d 123 (1950). But, plaintiff, in order to maintain venue under Exception 12, must allege that he has a valid lien. Texas International Products v. Mustex, Inc., 368 S.W.2d 27, 29 (Tex.Civ.App., Fort Worth, 1963, no writ). And, if the petition fails to state an enforceable claim against the defendant for the foreclosure of a lien, or shows upon its face that plaintiff does not have an enforceable lien, the necessary venue facts are not established under Exception 12, Article 1995, V.A.C.S. 1 McDonald, Texas Civil Practice, § 4.20, p. 483, (1965 Rev.).

Plaintiff's pleading of performance of personal services in the recovery of the 65 acres as a basis for his lien must fail for two cogent reasons: (a) He affirmatively established that while he had an express written contract covering his employment, he was to be compensated *in money* for *money* he recovered; and (b) the establishment of the express contract proved that there was not an implied contract. In Phoenix Lumber Co. v. Houston Water Co., 94 Tex. 456, 61 S.W. 707, 709 (1901), the court said:

"If there was an express contract there could be no implied contract arising out of the acts of performance of it. The one is destructive of the other. Two things which cannot coexist will not constitute one and the same thing."

See also, Musick v. Pogue, 330 S.W.2d 696, 699 (Tex.Civ.App., San Antonio, 1959, error ref. n. r. e.); City of San Antonio v. Guido Bros. Construction Co., 460 S.W. 2d 155, 166 (Tex.Civ.App., Beaumont, 1970, error ref. n. r. e.).

■  Plaintiff may not maintain venue under the partition section of the statute, Exception 13, for several reasons. Plain-

tiff offered in evidence the "Compromise Settlement Agreement" or judgment entered in the condemnation · proceedings wherein the 65-acre tract was "lifted out" of the area taken by Trinity River Authority. This judgment shows clearly that (a) plaintiff was not named as a party to the proceeding and, therefore received no direct interest in the 65-acre tract by virtue of the judgment; and (b) that there were other parties who jointly owned the property.[2] Not all of these parties were named in the amended petition filed by the plaintiff herein.

Chief Justice Cureton, in his usual clear and forceful manner, held in Ward v. Hinkle, 117 Tex. 566, 8 S.W.2d 641, 645 (1928) that a partition suit cannot be maintained unless all of those who have an interest in the property are parties to the suit. See also, De La Vega v. League, 64 Tex. 205, 212 (1885); Burkitt v. Broyles, 340 S.W.2d 822, 823 (Tex.Civ.App., Waco, 1960, error ref. n. r. e.).

Plaintiff, during the course of his testimony upon the hearing below, attempted to justify the omission of Robert S. Parks and Joseph B. Parks, by introducing a deed from such persons to himself. This instrument, dated August 27, 1970 (four days before his original petition was filed), is in the form of a special warranty deed and purports to convey to the plaintiff an undivided one-third interest in and to the entire 220-acre tract described in the condemnation proceedings. Being asked specifically if "Robert Parks and Joe Parks pres-

ently claim an interest in this piece of property," plaintiff replied: "I don't know."[3]

▮▮▮ We agree with plaintiff in many of the reasons he assigns for maintaining venue in San Jacinto County under Exception 13, particularly these: (1) The nature of the suit is determined from the petition itself. Carter v. Clark, 242 S.W.2d 677, 678 (Tex.Civ.App., Eastland, 1951, no writ), and cases therein cited. (2) In a partition suit, plaintiff is not required to plead his title. Hughey v. Mosby, 31 Tex.Civ.App. 76, 71 S.W. 395, 396 (Galveston, 1902, error ref.). (3) Plaintiff was not required to set out and allege and specific shares of the parties. Maverick v. Burney, 88 Tex. 560, 32 S.W. 512, 513 (1895). We part company with plaintiff, however, when he asserts that the "primary purpose of the lawsuit is to effect a partition of the land wholly situated within San Jacinto County, Texas."

Although the court was considering Exception 14 in Renwar Oil Corporation v. Lancaster, 154 Tex. 311, 276 S.W.2d 774, 775 (1955), the language is appropriate here:

"To determine the true nature of this suit, we must look first to plaintiffs' pleading and the relief they seek."

See also, McFarling v. Cavender, 469 S.W.2d 478, 480 (Tex.Civ.App., Beaumont, 1971, no writ) wherein additional authorities on the "primary and dominant purpose" doctrine are cited. Upon the record before us, we are of the opinion that plaintiff has

---

2. The decretal portion of the judgment in the condemnation case names as the owners of the land the following: ROBERT S. PARKS and wife, COLLEEN, PARKS, JOSEPH H. PARKS and wife, ELIZABETH M. PARKS, BUD COLLINS HARWOOD WILSON and husband, ROBERT L. WILSON, BOB G. LEWIS, TRUSTEE UNDER THE WILL OF BINZ J. SETTEGAST, DECEASED, JANE McGALL and husband, SCOTT A. McGALL, and STEPHEN HARWOOD and wife, SANDRA HARWOOD.

3. Defendant suggests in his brief that the interest of the Parks brothers was not extinguished by the deed. He reasons that since the instrument purported to convey an undivided one-third interest in the entire tract (rather than merely the grantors' one-half), the deed, if effective, merely reduced the Parks' interest to one-sixth. (One-half interest reduced by one-third leaves a remaining one-sixth in the grantors.)

not shown his right to maintain venue in the county of suit under Exception 13.

Defendant has tendered a series of points complaining of the refusal of the trial court to permit extensive cross-examination of plaintiff in defendant's effort to establish that the allegations concerning title to land (Exception 14) were fraudulently made for the purpose of conferring venue in the county of suit. The authorities upon which defendant relies are set forth in the margin,[4] but under our view of the record, such points are not reached.

■ We now examine plaintiff's reliance upon Exception 14 of the statute, and do so under some well recognized rules. The venue facts a plaintiff is required to establish under Exception 14 are two: that his is a suit for the recovery of land or for damages thereto, and that a part of the land lay in the county of suit. Cowden v. Cowden, 143 Tex. 446, 186 S.W.2d 69, 71 (1945); Piazza v. Phillips, 153 Tex. 115, 264 S.W.2d 428 (1954). Ordinarily, except for proof as to the location of the land, the applicability of Exception 14 depends wholly upon the allegations of the petition, but the rule is not universal in its application. In Phillips Petroleum Co. v. Mecom, 375 S.W.2d 335, 339 (Tex.Civ.App., Austin, 1964, no writ), the court said:

> "The character of a lawsuit as a whole governs the matter of venue and the inclusion of a plea in trespass to try title cannot by itself change the character of the lawsuit. Ulmer v. Ulmer, 139 Tex. 326, 162 S.W.2d 944, Milburn v. Minette, Tex.Civ.App., 278 S.W.2d 269, no writ history."

See also, Brown v. Gulf Television Company, 157 Tex. 607, 306 S.W.2d 706, 709 (1957), wherein the court was considering Exception 14 and Article 4656, V.A.C.S., both of which are expressed in mandatory terms.

■ It is clear that a suit for the recovery of land must aver a legal or equitable title which gives the right to immediate possession. O'Quinn v. Dunagan, 227 S.W.2d 366, 370 (Tex.Civ.App., El Paso, 1949, no writ); W. B. Johnson Drilling Company v. Lacy, 336 S.W.2d 230, 234 (Tex.Civ.App., Eastland, 1960, no writ). A suit seeking to establish title, i. e. one for specific performance, is not within Exception 14. Smith v. Hall, 147 Tex. 634, 219 S.W.2d 441, 444 (1949); Corpus Christi Hardware Company v. Farrar, 417 S.W.2d 479, 481 (Tex.Civ.App., Houston, 1967, no writ).

■ From our analysis of plaintiff's pleading, we are of the opinion that plaintiff's allegations are insufficient to state a cause of action for the recovery of land. The dominant purpose of the suit is to establish plaintiff's right to be compensated for the services which he rendered to defendant. Such a pleading does not tender a present legal or equitable title with a right to immediate possession. O'Quinn v. Dunagan, supra.

■ Nor may plaintiff maintain venue under Exception 29a of Article 1995. Each of the defendants named in this suit occupies an identical position in the litigation and under 29a, plaintiff is required to establish the propriety of venue as to some defendant under some exception to the venue rule. The rule is stated in 1 McDonald, Texas Civil Practice, § 4.36, p. 544 (1965 Rev.), "That such defendant may waive his right to question the venue of the action will not deprive a protesting defendant of his right. Subdivision 29a never

---

4. Gold v. Simon, 424 S.W.2d 32 (Tex.Civ. App., Fort Worth, 1968, no writ); Batex Oil Company v. La Brisa Land and Cattle Co., 352 S.W.2d 769 (Tex.Civ.App., San Antonio, 1961, error dism.); 1 McDonald, Texas Civil Practice, § 4.55(a), p. 612 (1965 Rev.).

operates alone: it is invoked only when no other exception reaches the defendant urging his plea of privilege, but there is another defendant (not residing in the county of suit) against whom venue is demonstrably proper." There is no such defendant in this case.

Justice Walker in Ladner v. Reliance Corp., 156 Tex. 158, 293 S.W.2d 758, 761 (1956), stated the rule in this manner:

"Exception 29a is one which is never considered alone, but always in conjunction with some other subdivision of the statute. A plaintiff who relies upon this exception must therefore allege and prove: (1) the venue facts which show that the suit is maintainable where brought against at least one defendant under another subdivision of the statute, and (2) that the remaining defendants, whom he seeks to hold under Subdivision 29a, are necessary parties to the suit within the meaning of that subdivision."

See also, Shaw v. Allied Finance Company, 161 Tex. 88, 337 S.W.2d 107, 109 (1960); Fannin Bank v. Johnson, 432 S.W.2d 138, 141 (Tex.Civ.App., Houston—1st Dist., 1968, error dism.).

Having determined that venue was not properly sustained as to the appealing defendant, we next consider the type of order to enter herein. An analysis of the petition discloses that the liability, if any, of the defendants is joint, so that the suit in its entirety must be transferred to the county of the residence of the defendant whose plea is sustained. Tunstill v. Scott, 138 Tex. 425, 160 S.W.2d 65, 69 (1942); International Harvester Company v. Stedman, 159 Tex. 593, 324 S.W.2d 543, 545 (1959).

The judgment of the trial court is reversed and the cause is remanded with instructions to transfer the entire case to the District Court of Fort Bend County, Texas.

Reversed and remanded with instructions.